NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

BRIAN S. KERN and NEW JERSEY
PHYSICIANS UNITED RECIPROCAL
EXCHANGE,

      Plaintiffs,

v.

THE MEDICAL PROTECTIVE
COMPANY, INC. d/b/a PRINCETON
INSURANCE COMPANY and DOES 1-10,

      Defendants.

Civil Action No. 13-02286-BRM-TJB

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is The Medical Protective Company Inc., d/b/a Princeton Insurance Company's ("Princeton") Motion for Attorney Fees and Costs. (ECF No. 153.) Plaintiff New Jersey Physicians United Reciprocal Exchange ("NJ PURE") opposes the Motion. (ECF No. 159.) Having reviewed the submissions filed in connection with the Motion and having heard oral argument pursuant to Federal Rule of Civil Procedure 78(a) on April 16, 2019, for the reasons set forth below and for good cause shown, Princeton's Motion is **DENIED**.

**I.    BACKGROUND**

At issue before this Court is whether Princeton is entitled to attorney's fees and costs pursuant to Section 35(a) of the Lanham Act. The facts and procedural history of this matter are set forth in this Court's prior opinion (ECF No. 151), and need not be repeated here. The following factual background is pertinent to this motion.

1

On February 16, 2018, Princeton filed a Motion for Summary Judgment. (ECF No. 145.) NJ PURE opposed the Motion on March 16, 2018. (ECF No. 146.) On September 20, 2018, the Court granted Princeton's Summary Judgment Motion and entered judgment in its favor. (ECF Nos. 151 and 152.) As a result, on October 22, 2018, Princeton, as the prevailing party, filed a Motion for Attorney Fees and Costs. (ECF No. 153.) NJ PURE opposes the Motion. (ECF No. 159.) The Court heard oral argument on April 16, 2019, and reserved its decision.

## II. DECISION

Princeton seeks attorney's fees and costs, as a prevailing party pursuant to 15 U.S.C. § 1117 and in accordance with Federal Rule of Civil Procedure 54(d)(2) and Local Civil Rule 54.2. (ECF No. 153-1 at 1.) It claims fees are appropriate under 15 U.S.C. § 1117, which permits fees to prevailing parties "in exceptional cases", because there was "an unusual discrepancy in the merits of the positions taken by the parties" and NJ PURE "litigated the case in an unreasonable manner." (*See id.* at 22-26 (citing *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014) (citation and internal quotation marks omitted).) Princeton argues: (1) NJ PURE's claims against it were baseless from the start because it "had no proof that it was harmed by a Marketplace Update" (ECF No. 153-1 at 22);[1] (2) NJ PURE acted unreasonably during discovery; and (3) NJ PURE had no legitimate motivation for filing and continuing to prosecute this matter. (*See* ECF No. 153-1.)

NJ PURE contends this is not an exceptional case. (ECF No. 159 at 26.) NJ PURE argues "Princeton's moving papers rehash more than five years of contentious litigation between

---

[1] This argument was emphasized again during oral argument.

2

corporate competitors." (*Id.* at 26, 34-39.) It further claims its Complaint was filed and pursued in good faith. (*Id.* at 34.)

### A. Standard of Review

The Lanham Act provides that a "court in exceptional circumstances may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a); *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir. 2000) (highlighting that "the language of § 35(a) authorizing attorney's fees to the prevailing party in the discretion of the court [applies to] defendants as well as plaintiffs"). The Act does not define "exceptional case."

When examining whether a case was exceptional, courts have conducted a two-part inquiry:

> First, the District Court must decide whether the defendant engaged in any culpable conduct. We have listed bad faith, fraud, malice, and knowing infringement as non-exclusive examples of the sort of culpable conduct that could support a fee award. Moreover, the culpable conduct may relate not only to the circumstances of the Lanham Act violation, but also to the way the losing party handled himself during the litigation. Second, if the District Court finds culpable conduct, it must decide whether the circumstances are "exceptional" enough to warrant a fee award.

*Green v. Fornario*, 486 F.3d 100, 103 (3d Cir. 2007). In 2014, however, the Supreme Court interpreted an identical provision in the Patent Act, 35 U.S.C. § 285, and gave the word "exceptional" its ordinary meaning, "uncommon, rare, or not ordinary" and rejected earlier case law that required a showing of culpable conduct. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553-54 (2014).

Therefore, in *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314–17 (3d Cir. 2014), the Third Circuit revisited the governing standard for determining "exceptional" cases, in trademark cases, following the Supreme Court's decision in *Octane Fitness, LLC*. *Fair Wind*, held

3

that a case is exceptional if: "(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an "unreasonable manner." *Id.* at 315. "Whether litigation positions or litigation tactics are 'exceptional' enough to merit attorneys' fees must be determined by district courts 'in the case-by-case exercise of their discretion, considering the totality of the circumstances.'" *Id.* (quoting *Octane Fitness, LLC*, 572 U.S. at 554.) A court's discretion to award attorney fees "is not cabined by a threshold requirement that the losing party acted culpably." *Id.* "Courts, moreover, may consider a list of factors including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Renna v. Cty. of Union, N.J.*, No. 11-3328, 2015 WL 93800, at *7 (D.N.J. Jan. 7, 2015), *report and recommendation adopted*, No. 11-3328, 2015 WL 1815498 (D.N.J. Apr. 21, 2015).

**B. Analysis**

It in undisputed Princeton is a prevailing party. The only issue before this Court is whether this matter is "exceptional."

Princeton argues, and maintained at oral argument, that NJ PURE's lack of proof that it was harmed by the Marketplace Updates throughout this matter warrant attorney's fees. (ECF No. 153-1 at 25.) NJ PURE maintains the case was brought in good faith and, as the facts were developed through discovery, they did not develop as they had anticipated.

The Court finds the parties' differing fact presentations were based on good faith and do not rise to the level of discrepancy in the merits warranting a finding of an "exceptional case" to award fees under the Lanham Act. Indeed, NJ PURE acted in good faith in filing and continuing with the litigation. Their fact discovery revealed the following, which they believed in good faith

4

could create a material issue of fact as to whether the information in Princeton's Marketplace Updates harmed NJ PURE:

- Franca Maiorano-Hobbs of URG testified that, after telling her Boynton & Boynton broker that she took a meeting with NJ PURE, she received an unsolicited email from her broker containing seven years of Boynton Marketplace Updates that were based on Princeton's work product.
- Hobbs also testified that she assumed the information contained in the Marketplace Updates was accurate because "it came out of a filing – state filing. I would assume whatever an insurance company filed was accurate." However, as demonstrated above, the claims contained in the Marketplace Updates did not come from a State filing, and were not accurate. URG ultimately decided they would not do business with NJ PURE.
- Lawrence Epstein, the PAA employee responsible for securing malpractice coverage, was given information from the Marketplace Updates by his Boynton & Boynton broker after he solicited NJ PURE for a quote. As with URG, the false information contained in the Marketplace Updates was used to steer PAA away from doing business with NJ PURE, which was precisely Princeton's intent and purpose in disseminating it.

(ECF No. 159 at 27-28 (internal citations and emphasis omitted).) While it could be argued NJ PURE's claims had little chance of success when filed and after discovery, they were not so "uncommon" or "exceptionally meritless" that it "stands out from others." *Octane Fitness, LLC*, 572 U.S. at 554.

As to NJ PURE's legal arguments which Princeton claims were a "knowing misstatement of the governing law," (ECF No. 153-1 at 18), the Court finds the arguments were an attempt at a colorable argument, despite unsuccessful. At summary judgment, NJ PURE argued there was an alleged presumption of irreparable harm afforded to parties seeking injunctive relief in Lanham Act cases where the challenged advertising is making a misleading comparison or reference to a competitor's product. (ECF No. 146 at 10.) NJ PURE relied on *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 129 F. Supp. 2d 351, 364 (D.N.J. 2000), *aff'd*,

5

290 F.3d 578 (3d Cir. 2002), *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d 594, 599 (D.N.J. 2003), and *Bracco Diagnostics*, *Inc. v. Amersham Heath, Inc.*, 627 F. Supp. 2d 384, 481 (D.N.J. 2009) for this proposition. (*Id.*) In fact, *Bracco Diagnostics* states that "a predicate finding of intentional [or willful] deception, as a major part of the defendant's marketing efforts, contained in comparative advertising[;] will justify a rebuttable presumption of causation and injury in fact." *Bracco Diagnostics*, *Inc.*, 627 F. Supp. 2d at 481 (citations omitted) (alterations in original). Nevertheless, the Court disagreed with NJ PURE's argument and the *Bracco* analysis, relying on *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 216 (3d Cir. 2014). The Court found:

> [T]he Novartis case is superseded by the Third Circuit's decision on appeal and *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 216 (3d Cir. 2014). On appeal in the Novartis case, the Third Circuit held the district court committed error in relying on the wrong standard in granting relief, but nevertheless affirmed the decision because the error "was harmless because there is sufficient evidence in the record to support a finding of irreparable harm." *Novartis Consumer Health, Inc.*, 290 F.3d at 595. In addition, the Third Circuit has explicitly held "[b]ecause a presumption of irreparable harm deviates from the traditional principles of equity, which require a movant to demonstrate irreparable harm, we hold that there is no presumption of irreparable harm afforded to parties seeking injunctive relief in Lanham Act cases." *Ferring Pharm., Inc.*, 765 F.3d at 216.
> 
> Nevertheless, even if there was a presumption of irreparable harm, it is just that, a presumption. "Federal Rule Evidence 301 provides the default rule for how presumptions operate in federal civil cases." *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 320 (3d Cir. 2014). The party the presumption operates against must produce evidence to rebut the presumption, while the actual burden of persuasion remains does not change. *Id.* This is entitled the "bursting bubble" theory, where "the introduction of evidence to rebut a presumption destroys that presumption, leaving only that evidence and its inferences to be judged against the competing evidence and its inferences to determine the ultimate question at issue." Id. (citations omitted).

(ECF No. 151 at 13-14.) Therefore, it cannot be said that NJ PURE's arguments were "exceptional" as to warrant an award of attorney's fees.

Further, it is true that this case is unusual in the sense that discovery had to be managed by Judge Bongiovanni. By the time discovery closed, Judge Bongiovanni issued no fewer than eight discovery-related opinions and/or orders. However, unlike some of the more aggressive and contentious discovery cases the Court has overseen, here, neither side resorted to wasteful procedural or dilatory tactics that would make this matter exceptional. In fact, *both* parties filed motions to compel discovery, and *both* succeeded on such motions. For example, the parties exchanged initial disclosure and written discovery during the summer of 2013. (ECF No. 28.) On December 24, 2013, Princeton moved to compel NJ PURE to respond to several discovery requests to which it had objected, such as disclose relevant documents, answer relevant interrogatories, and respond to requests for admission. (ECF No. 37.) On December 26, 2013, NJ PURE filed a Motion to Compel multiple categories of information and documents, and to have Princeton correct deficiencies in documents it had already produced. (ECF No. 38.) On May 16, 2014, the Court granted in part and denied in part Princeton's Motion to Compel and ordered to produce the discovery set forth in the Order. (ECF No. 57.) On June 18, 2014, Judge Bongiovanni ordered Princeton to produce documents; any other advertisements, marketing or promotional material that directly compare the financial condition of NJ PURE and Princeton; and ordering Princeton to produce all communications to/from the New Jersey Department of Banking and Insurance concerning NJ PURE's complaint regarding Princeton's alleged false advertisements. (ECF No. 58 at 12-13.) Indeed, discovery does not always play out the way the parties intend. As such, the Court finds both parties' actions and conduct were the product of overzealous litigation techniques,

neither party was blameless as to the number of discovery applications, and this case does not compare to the more contentious discovery cases the Court has overseen.

Princeton also alleges a host of misconduct with respect to the depositions of Eric Poe and Dr. Lena Chang. Originally, NJ PURE refused to produce Dr. Chang for deposition. (ECF No. 153-1 at 9.) Ultimately, NJ PURE was ordered to produce Dr. Chang but, nevertheless, prevented Princeton from asking Dr. Chang questions concerning several publicly available documents that Dr. Chang had authored. (*Id.* at 10.) Princeton also took issue with Dr. Chang's limited knowledge to support the contentions set forth in NJ PURE's complaint. (*Id.* at 10-11.) Princeton argues NJ PURE's misconduct, in not preparing Poe for his deposition, forced his deposition to be conducted over four days. (*Id.* at 11.) At some point, Princeton sought judicial intervention to continue the deposition of Poe, whereby Judge Bongiovanni advised "that she expect[ed] the remainder of his deposition to be conducted efficiently and from [] Poe to be adequately prepared for same." (Ex. 18 to ECF No. 153-9.) Accordingly, Poe's deposition continued on May 18, 2016, but was not completed due to other obligations he had to attend to. (Ex. 21 to ECF No. 153-9.) As a result, Princeton again sought the intervention of the Court to complete the deposition of Poe. (*Id.*)

Despite these disputes, every time Princeton filed a motions for sanctions, Judge Bongiovanni denied them as unwarranted. (*See e.g.*, ECF No. 137 ("While the Court finds that NJPURE should have produced the undisclosed information during fact discovery, the Court also finds that NJPURE has in large part provided understandable, if not substantially justified, reasons for its failure."); ECF No. 133 ("It is clear from the record that NJPURE's counsel's failure to appear at the April 28, 2016 deposition was inadvertent. In addition, other depositions had been suddenly cancelled in these matters, albeit with at least some notice or because of circumstances outside the deponent or counsel's control, without any requests for sanctions being made. The

8

Court, therefore, declines to impose sanctions.").) As such, the Court also finds Princeton is not entitled to attorney's fees on this basis.

Considering all of Princeton's arguments and the totality of the circumstances, the Court does not find this matter "exceptional." Accordingly, Princeton's Motion for Attorney's Fees and Costs is **DENIED**.

### III. CONCLUSION

For the reasons set forth above, Princeton's Motion for Attorney's Fees and Costs (ECF No. 145) is **DENIED**.


**Date:** May 28, 2019 /s/ *Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**